Troy P. Foster #017229
**The Foster Group, PLLC**
518 E. Willeta Street
Phoenix, Arizona 85004
Tel: 602-461-7990
tfoster@thefosterlaw.com
*Attorneys for Plaintiffs*

Kenneth Frakes #021776
**Bergin Frakes Smalley & Oberholtzer, PLLC**
4343 E. Camelback Road #210
Phoenix, AZ 85018
kfrakes@bfsolaw.com
*Co-Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amy K. White and David White, a married couple,<br><br>Plaintiff,<br><br>vs.<br><br>VHS of Arrowhead, Inc., a Delaware corporation; Independence American Insurance Company, a foreign insurance company;<br><br>Defendants. | Case No.: 2:19-CV-05175-CDB<br><br>**FIRST AMENDED COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff complains and for cause of action alleges as follows:

**THE PARTIES**

1.   At all times relevant hereto, Amy K. White ("Plaintiff"), resided in Maricopa County, Arizona, and is thus a citizen of the State of Arizona.

1

2. At all times relevant hereto, David White, Plaintiff Amy White's husband, resided in Maricopa County, Arizona, and is thus a citizen of the State of Arizona.

3. Plaintiff David White is a party to this action because Defendants' conduct damaged the marital community.[1]

4. At all material times to this Complaint, Independence American Insurance Company ("Independence Insurance") was a foreign insurance company authorized to do, and doing, business in the State of Arizona.

5. At all times relevant to this Complaint VHS of Arrowhead, Inc. ("VHS") is a Delaware corporation authorized to do, and doing, business in Maricopa County under the trade names "Abrazo Arrowhead Campus" and "Abrazo Peoria Emergency Center".

6. VHS operates a number of healthcare facilities in Maricopa County, Arizona.

7. VHS's healthcare facilities that are relevant to this Complaint are Abrazo Peoria Emergency Center and Abrazo Arrowhead Campus.

8. The acts and omissions forming the basis of this Complaint occurred in Maricopa County, Arizona.

9. Jurisdiction and venue are appropriate in this Court.

**The Emergency and Procedure**

10. Plaintiff went to urgent care on October 30, 2018, for abdominal pain and fever and was instructed to go to the emergency room.

---

[1] However, for ease of reference, unless otherwise noted, "Plaintiff" refers to Amy K. White.

2

11. Plaintiff arrived at VHS's, Abrazo Peoria Emergency Center ("Abrazo Peoria") on the evening of October 30, 2018.

12. VHS healthcare provider at Abrazo Peoria noted that Plaintiff had an inflamed appendix which needed immediate removal.

13. VHS's Abrazo Peoria did not conduct this procedure.

14. As such, VHS's Abrazo Peoria provider contacted VHS's Abrazo Arrowhead Campus ("Abrazo Arrowhead") to schedule the procedure.

15. Plaintiff's husband was not permitted to transport Plaintiff to Abrazo Arrowhead as Plaintiff had already been admitted as a patient by Abrazo Peoria.

16. VHS transported Plaintiff from Abrazo Peoria to Abrazo Arrowhead at around 11:30 p.m. on October 30, 2018.

17. After her arrival at Abrazo Arrowhead, Plaintiff was told that she would be an "add on" s surgery would likely not occur until the next day.

18. The surgeon expressed some concerns that, because the symptoms had been around for a couple of days, the appendix could be perforated and require a more invasive procedure; however, the surgery was not expedited.

**Misrepresentations and Omissions**

19. Prior to the surgery, while Plaintiff was in pain in the waiting area, she was approached by VHS's admitting clerk at Abrazo Arrowhead, requesting a $24,000.00 cash payment, represented as a "discount" for the procedure.

20. VHS's representative told Plaintiff that it could underbid the insurance company, and it would be cheaper to just pay VHS cash.

3

21. As this did not seem like a legitimate request, Plaintiff David White called Independence Insurance and/or Independence Insurance (collectively the "Independence Insurance").

22. The Independence Insurance told the Plaintiff David White to reject the cash price; the Independence Insurance affirmatively represented that their insurance plan would cover all of the charges with the exception of the $900 deductible according to Plaintiff's policy.

23. The Independence Insurance, however, omitted material information and facts.

24. Namely, in order for the Independence Insurance to cover the expenses, Plaintiff would have to be admitted in the facility for at least twenty-four hours.

25. Plaintiffs did not know that a condition of Independence Insurance to cover the VHS services was that she would have to be admitted in the facility for at least 24 hours.

**VHS's Duty to Use Reasonable Case in Communicating with Plaintiff Information for Insurance Coverage and the Costs For Medical Services**

26. Plaintiffs informed VHS that (1) Plaintiffs intended and desired that their health insurer—Independence Insurance—would cover VHS's services; and (2) Plaintiffs would take the necessary actions required so that Independent Insurance would, in fact, cover VHS's services. To that end, Plaintiffs, wanting to confirm Independence Insurance representation that the services would be covered less the $900 deductible, asked VHS the total amount that they would be obligated to pay VHS for the medical services it rendered.

27. Then, upon information and belief, VHS contacted Independence Insurance to confirm coverage in the course of its business, which it has a pecuniary interest.

28. Upon information and belief, prior to the surgery, VHS's employee—it's "Patient Access Staff Member—contacted Independence Insurance (Plaintiff's health insurance carrier) and communicated to Independence Insurance the medical services that it was going to render to Plaintiff.

29. Upon information and belief, VHS received information from Independence Insurance related to Independence Insurance's insurance coverage of the medical services VHS would render to Plaintiff, including things like co-insurance and deductible amounts, and the remaining amounts that Independence Insurance would cover.

30. Upon information and belief, VHS knew, or should have known, that the Independence Insurance required Plaintiff to be admitted in the facility for at least 24 hours in order to cover the costs with the exception of the deductible.  The reason VHS knew that Independence Insurance required that Plaintiff remained in VHS's facility for at least 24 hours is because VHS contacted Independence Insurance and received information related to Plaintiff's coverage, including but not limited to, the required 24 hour stay.

31. VHS, in the course of its business, received information from Independence Insurance and conveyed that information to Plaintiffs related to the amounts that Independence Insurance would cover as her health insurance carrier.

32. Upon information and belief, VHS communicated to Plaintiff only some of the information it received from Independence Insurance that related to the amounts that

5

Independence Insurance would cover for the medical services VHS would render to Plaintiff.

33. VHS told Plaintiffs that (1) Plaintiffs' total amount that they would be required to pay VHS for its services was the $900 deductible; and (2) that Independent Insurance would cover the remaining costs.

34. This statement set forth above was a misleading partial statement because VHS did not tell Plaintiffs that staying 24 hours in VHS's facility was a condition for Independence Insurance to cover the services. Similarly, VHS knew that for the partial statement described above *not to be* misleading, VHS must have told Plaintiffs that for Independence Insurance to cover the services, Plaintiff must stay in VHS's facility for 24 hours.

35. VHS told Plaintiffs— for Plaintiffs' guidance—the total financial obligation that Plaintiffs would have to pay for the medical services VHS would render to Plaintiff was (1) the $900 deductible; and (2) that Independent Insurance would cover the remaining costs. VHS failed to tell Plaintiffs that Independence Insurance required Plaintiffs to remain in the facility for at least 24 hours for this coverage.

36. Under the circumstances described above, Plaintiff justifiably relied on the information that VHS provided her related to her insurance coverage and the amount Plaintiff would be required to pay taking into consideration her insurance.

37. Plaintiff's reliance was justifiable because (a) VHS had an employee—it's "Patient Access Staff Member—contact Independence Insurance (Plaintiff's health insurance carrier) who communicated to Independence Insurance the medical services that

6

VHS was going to render to Plaintiff; (b) VHS received information from Independence Insurance related to Independence Insurance's insurance coverage of the medical services VHS would render to Plaintiff, including things like co-insurance and deductible amounts, and the remaining amounts that Independence Insurance would cover; (c) VHS communicated to Plaintiff the information it received from Independence Insurance that related to the amounts that Independence Insurance would cover for the medical services VHS would render to Plaintiff; (d); VHS told Plaintiff that it would notify her of the cost of the services it would render after taking into consideration her insurance coverage; and (e) based on the coverage information that VHS received from Independence Insurance, VHS did tell Plaintiff the total financial obligation that Plaintiff would have to pay for the medical services she would receive.  VHS had a duty to exercise reasonable care and competence in obtaining and communicating information to Plaintiff relating to the amounts Independence Insurance would cover for the medical services VHS would render to Plaintiff.

38. Specifically, VHS had a duty to use reasonable care and competence in obtaining and communicating the conditions under which Independence Insurance would cover VHS's services rendered to Plaintiff and to inform Plaintiff that, in order for Independence Insurance to cover the services VHS provided, Plaintiff must stay in the facility for at least 24 hours.

39. VHS supplied Plaintiffs false information related to the costs Plaintiffs would be required to pay by not informing them of requirement that she must remain in the VHS's facility for at least 24 hours.

7

**The Discharge**

40. On October 31, 2018, Plaintiff had her surgery completed around 1:30 p.m. after which the medical provider for VHS's Abrazo Arrowhead stated that the surgery was a success and Plaintiff would be kept overnight.

41. VHS's nurse at Abrazo Arrowhead, however, advised Plaintiff that if she was able to get up and move around, she would be released home later the same day and not have to stay overnight.

42. As described above, VHS provided false information to Plaintiffs for their guidance related to the total amounts she would be required to pay by failing to disclose the material information and omitted the fact that Plaintiff needed to remain in the VHS facility for at least 24 hours for the services to be covered.

43. Having been in numerous VHS's healthcare facilities and waiting for many hours, Plaintiff got up, and moved around.

44. Again, neither VHS nor the Independence Insurance told Plaintiff, at any time, that her early discharge would result in a negative financial impact to her.

45. Plaintiff reasonably relied upon the affirmative representations and omissions by VHS's representative and the Independence Insurance's representative. Plaintiffs' reliance on VHS's omission and concealment of the fact was reasonable and justified because it would have informed Plaintiffs that she needed to stay in the facility for at least 24 hours, she would have stayed in the facility for at least 24 hours, and because VHS omitted this fact, Plaintiffs did not stay in the facility for 24 hours causing Independence Insurance to deny coverage.

46. Plaintiff was discharged on October 31, 2018 at 3:52 p.m.

**The Damage Caused by Misrepresentations, Omissions, and Fraudulent Inducement**

47. Had Plaintiff remained in the hospital overnight, upon information and belief, the Independence Insurance would have covered the costs of the procedure, as originally represented via telephone by the Independence Insurance's representative.

48. However, because Plaintiff did not remain in the hospital for at least 24 hours, the Independence Insurance refused to pay the amounts that would be covered under the policy.

49. Upon information and belief, VHS has a policy or practice of attempting to discharge patients, in certain situations, before a 24-hour stay.

50. Upon information and belief, VHS's said policy or practice is in place to financially benefit VHS so that it can (1) either charge patients directly at a significantly higher rate, rather than triggering a contracted discounted insurance rate; or (2) VHS can turn over the bed for another patient in order to make more money.

51. Upon information and belief, VHS's agents acted in conformity with that policy or practice with respect to Plaintiff.

52. VHS's actions were willful and intentional, and intended for VHS's financial gain, and to Plaintiff's detriment.

53. Two days after being discharged from invasive and emergent surgery, VHS called Plaintiff to demand a $68,000.00 cash payment for the procedure.

54. The total amount that VHS claims the Plaintiff owes is approximately $136,000.00.

55. As a proximate result of Defendants VHS's, Independence Insurance's, and Independence Insurance's fraud, deceit, misrepresentations, and policies/practices, Plaintiff was fraudulently induced, and has been damaged, in an amount to be determined at trial, but of not less than $50,0001.00.

56. Defendants acted with an "evil mind", oppression, fraud, and malice, and Plaintiff is entitled to punitive damages.

## Count One:  Negligence/Negligent Misrepresentation
### (All Defendants)

57. Plaintiffs reincorporate, by reference, all factual allegations contained in paragraphs 1 through 56.

58. Independence Insurance also owes a duty to provide material information to Plaintiff related to her rights under the policy and to communicate that material information with reasonable care.

59. VHS, as Plaintiff's healthcare provider, had a special relationship with Plaintiff.

60. Under the Law, one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

61. Under the Law,

10

    (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

    (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

        (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

        (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

        (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

        (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

        (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

62. Again, VHS had a duty to exercise reasonable care and competence in obtaining and communicating information to Plaintiff relating to the amounts Independence Insurance would cover for the medical services VHS would render to Plaintiff.

63. As discussed above, Defendants breached this duty by providing Plaintiffs with false and incorrect information, omitted, or failed to disclose material information to Plaintiffs in which Plaintiffs reasonably relied.

64. As discussed above, the misrepresentation or omission of fact related to the fact that (1) VHS knew the fact that in order for Independence Insurance to cover VHS's services rendered to Plaintiff, Plaintiff would have to stay in the facility for at least 24 hours after the surgery; and (2) failed to communicate that fact to Plaintiffs with reasonable care.

65. Therefore, Defendants breached the duty to use reasonable care in communicating material information related to Independence Insurance's coverage and the cost Plaintiff would be obligated to pay for the services VHS rendered.

66. Defendants intended that Plaintiffs rely on the information provided as it relates to her care and the cost of her care.

67. Defendants failed to exercise reasonable care or competence in obtaining and communicating the information related to Plaintiff's care, the amount that Independence Insurance would cover for that care, and/or the cost Plaintiff would be obligated to pay for that care.

68. Plaintiffs relied on the information Defendants communicated to Plaintiff and facts omitted in that communication.

69. Specifically, Defendants failed to communicate and omitted the fact that if Plaintiff remained in VHS's facility for at least 24 hours, Independence Insurance would have covered the procedure, less the $900 deductible.

70. Plaintiff's reliance was justified for the reasons set forth above and because it was the basis of Plaintiff's financial obligation to VHS. Plaintiffs' reliance on VHS's omission and concealment of the fact was reasonable and justified because it would have informed Plaintiffs that she needed to stay in the facility for at least 24 hours, she would have stayed in the facility for at least 24 hours, and because VHS omitted this fact, Plaintiffs did not stay in the facility for 24 hours causing Independence Insurance to deny coverage.

71. As a result of Defendants' breaches, Plaintiffs were damaged.

72. Specifically, had Defendants exercised reasonable care and informed Plaintiff that if she left the VHS facility before 24 hours elapsed since her surgery, then Plaintiff would have remained in the hospital for more than 24 hours and then Independence Insurance would have covered the medical services VHS rendered, less the $900 deductible.

73. Now, because of these breaches, Independence Insurance will not cover the services VHS rendered to Plaintiff.

74. These claims arise out of contract. Accordingly, Plaintiff is entitled to her attorneys' fees under the terms of the relevant contracts and/or A.R.S. § 12-341.01.

**Count Two: Breach of Good Faith and Fair Dealing**
**(Independence Insurance)**

75. Plaintiffs reincorporate, by reference, all factual allegations contained in paragraphs 1 through 74.

76. Independence Insurance owes a duty of good faith and fair dealing to

Plaintiff.

77. Included in that duty, Independence Insurance had the obligation to reasonably inform Plaintiff of her rights and obligations under the policy, and disclose all pertinent provisions, limitations, and benefits under the policy.

78. Similarly, Independence Insurance also owes a duty to provide material information to Plaintiff related to her rights under the policy and to communicate that material information with reasonable care.

79. As set forth fully above, Independence Insurance breached the duty of good faith and fair dealing.

80. As a result of this breach, and as discussed above, Plaintiffs were damaged in an amount to be proven at trial.

81. These claims arise out of contract. Accordingly, Plaintiff is entitled to her attorneys' fees under the terms of the relevant contract and/or A.R.S. § 12-341.01.

**Count Three: Interference For Contractor Business Expectancy**
**(VHS of Arrowhead, Inc.)**

82. Plaintiffs reincorporate, by reference, all factual allegations contained in paragraphs 1 through 81.

83. Plaintiff had a contract with Independence Insurance and had a business expectancy that if Plaintiff paid the deductible, all other costs for the procedure arising out of VHS's medical services would be paid for.

84. VHS knew about Plaintiff's business expectancy with Independence Insurance because VHS contacted Independence Insurance and Plaintiff told VHS that she

had insurance through Independence Insurance and intended to use it to cover their services

85. VHS wrongfully and intentionally interfered with Plaintiff's business expectancy with Independence Insurance by misrepresenting and failing to reveal the material information to Plaintiffs that she must stay in VHS's facility for 24 hours in order for Independence Insurance to cover the services. Plaintiffs, relying on this misrepresentation and omission, did not stay in VHS's facility for 24 hours, which caused the termination of Plaintiffs' business expectancy and Independence Insurance's refusal to cover the services VHS provided.

86. As discussed above, VHS's conduct was intentional and improper and for its own gain and to the detriment of Plaintiff.

87. Specifically, VHS concealed the fact that Plaintiff must stay in the facility for at least 24 hours in order for Independence Insurance to cover the services rendered to Plaintiff for its own gain and to the detriment of Plaintiff.

88. Upon information and belief, VHS's said policy or practice is in place to financially benefit VHS so that it can (1) either charge patients directly at a significantly higher rate, rather than triggering a contracted discounted insurance rate; or (2) VHS can turn over the bed for another patient in order to make more money.

89. Upon information and belief, VHS's agents acted in conformity with that policy or practice with respect to Plaintiff. Accordingly, VHS's conduct was intentional in order that is could charge Plaintiff more for the services that Independence Insurance would pay or to turn over the bed to have more patients and make more money.

90. VHS's conduct was improper because the conduct was for its own gain with a conscious disregard for Plaintiff's rights.

91. Thus, VHS intentionally and improperly omitted the fact, and failed to inform Plaintiff that, in order for Independence Insurance to cover the medical services rendered by VHS, then Plaintiff was required to remain in the hospital for at least 24 hours.

92. As a result, Plaintiffs suffered damages caused by VHS.

### Count Four:  Fraud
### (VHS of Arrowhead, Inc.)

93. Plaintiffs reincorporate, by reference, all factual allegations contained in paragraphs 1 through 92.

94. VHS was in possession of material information relating to the costs of the care VHS provided to Plaintiff.

95. Plaintiff was in VHS's care.

96. As discussed above, VHS has the obligation to reveal material information relating to the cost of Plaintiff's healthcare services and the amounts Plaintiff would be obligated to pay.

97. As discussed above, VHS had a legal obligation and a duty to exercise reasonable care and competence in obtaining and communicating information to Plaintiff related to the amounts that Independence Insurance would cover for the services that VHS rendered to Plaintiff.

98. Upon information and belief, VHS knew the fact that Independence Insurance required Plaintiff to be admitted in its facility for at least 24 hours in order for Independence Insurance to cover the costs, less the $900 deductible.

99. The reason VHS knew that Independence Insurance required that Plaintiff remained in VHS's facility for at least 24 hours is because, upon information and belief, VHS contacted Independence Insurance and received information related to Plaintiff's coverage, including but not limited to, the required 24 hour stay.

100. VHS concealed this fact and failed to reveal this material information by failing to inform Plaintiff that if she did not stay in the facility for at least 24 hours, then Independence Insurance would not cover the cost of the services VHS provided.

101. This concealment of the facts, and failure to reveal such material information, is equivalent to a misrepresentation.

102. The failure to reveal this information was material to Plaintiff and was sufficiently important to influence Plaintiff actions.

103. Namely, the concealment of the facts and failure to reveal the information had a direct effect on the amount that Plaintiff would be obligated to pay to VHS and the fact that Independence Insurance would not cover Plaintiff's medical expenses.

104. For the reasons set forth above, VHS knew this fact and material information was important to Plaintiff because VHS knew the Plaintiff was concerned with the cost of the services VHS would provide and the amount Independence Insurance would cover.

105. If VHS had not concealed the fact that Plaintiffs were required to stay in the hospital for a minimum of 24 hours, and had VHS communicated this fact to Plaintiff,

then Plaintiff would have remained in the hospital for the required 24 hours and Independence Insurance would have covered all the expenses, less the $900 deductible.

106. Upon information and belief, VHS intended that Plaintiff would act upon the concealment of this fact and failure to reveal this material information and leave VHS's facility.

107. Again, Plaintiff would not have left the facility knowing that staying a few more hours would have resulted in full coverage of the cost of the services, less her deductible.

108. Plaintiff did not know that she must have stayed in the facility for at least 24 hours in order for Independence Insurance to pay for the services provided by VHS because neither Independence Insurance nor VHS ever told her.

109. If Plaintiffs knew this material fact, she would have remained in VHS's facility for at least 24 hours and Independence Insurance would have covered the services VHS rendered to Plaintiff, less the $900 deductible.

110. Accordingly, Plaintiffs were ignorant to the falsity of the misrepresentation and omission or concealment of this material fact.

111. Plaintiffs relied on (1) VHS's obligation to communicate with care information that affected her insurance coverage and the amounts that Plaintiff would be obligated to pay VHS; and (2) VHS's concealment of the fact that Plaintiff must stay at VHS's facility for at least 24 hours in order for Independence Insurance to cover the medical services rendered.

112. In addition to the reasons set forth above, Plaintiffs' reliance on VHS's omission and concealment of the fact was reasonable and justified because it would have informed Plaintiffs that she needed to stay in the facility for at least 24 hours, she would have stayed in the facility for at least 24 hours, and because VHS omitted this fact, Plaintiffs did not stay in the facility for 24 hours causing Independence Insurance to deny coverage.

113. As a result of VHS's failure to reveal material information, Plaintiff was damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Amy K. White, prays for judgment against Defendants VHS of Arrowhead, Inc. and Independence American Insurance Company as follows:

A. For damages in an amount no less than $50,001.00.

B. For punitive damages in an amount to be determined at trial.

C. For attorneys' fees and costs of suit incurred herein; and

D. For such other and further relief as the court may deem proper.

DATED this 21st day of October, 2019.

| THE FOSTER GROUP, PLLC | BERGIN FRAKES SMALLEY & OBERHOLTZER |
|---|---|
| /s/ Troy Foster (*with permission*)<br>Troy P. Foster<br>518 E. Willetta Street<br>Phoenix, Arizona 85004<br>*Counsel for Plaintiffs* | /s/ Ken Frakes<br>Ken Frakes<br>4343 E. Camelback Road #210<br>Phoenix, AZ 85018<br>*Co-Counsel for Plaintiffs* |

CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2019, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

Michael W. Sillyman
Jeffrey Giancana
Kutak Rock LLP
8601 N. Scottsdale Road #300
Scottsdale, Arizona 85253
michael.sillyman@kutakrock.com
Jeffrey.giancana@kutakrock.com
*Counsel for VHS of Arrowhead Inc.*

Coree Elizabeth Neumeyer
Lukas M. Landolt
Quarles & Brady LLP
One Renaissance Square
2 N. Central Ave.
Phoenix, Arizona 85004
Coree.neumeyer@quarles.com
Lukas.landolt@quarles.com
*Counsel for Independence American Insurance Company*

By: /s/ Kristine Berry